# WILLIS A. ROBERTS, Respondent, v. CENTRAL LEAD COMPANY, Appellant.

### St. Louis Court of Appeals, July 22, 1902.

1. **Equity, Release of Cause of Action: PERSONAL INJURIES.**
Where a party signs a release of a cause of action for personal injuries and at the time is unable to fully understand the nature of the document because of physical and mental weakness produced by his injuries and the necessary use of drugs, a court of equity will rescind the release on timely application and refunding of its consideration.

2. ———: ———: RESCISSION OF RELEASE: REFUNDING MONEY PAID: DILIGENCE. Where a duty rests on plaintiff to refund a sum of money as incident to the rescission of a release, it should be performed with reasonable diligence in view of the circumstances.

3. **Jurisdiction of Court of Equity: STATUTE LAW; DEFENSE: CANCELLATION OF DOCUMENT.** The jurisdiction of equity to cancel a document obtained by fraud and imposition is not destroyed even though by statute the same facts may be utilized as a defense against the paper in a court of law.

4. ——: ——: JURISDICTION OF EQUITY NOT ELIMINATED BY STATUTE WHEN NO INTENT TO DO SO IS SHOWN. A remedial jurisdiction of equity is not eliminated by the enactment of a measure creating a remedy at law in like circumstances, where no intent is expressed in the enactment to extinguish the ancient jurisdicton.

5. Practice, Trial: DEMURRER: WAIVER OF OBJECTIONS BY ANSWER: STATUTORY CONSTRUCTION. Where a party, after his demurrer is overruled, answers over, he thereby waives all objections except to the jurisdiction of the subject-matter and the failure to state any cause of action, under section 602, Revised Statutes 1899.

6. ——: TRIAL COURT MAY DIRECT SEPARATE TRIALS FOR TWO CAUSES OF ACTION IN ONE PETITION. It is competent for the trial court to direct separate trials of two causes of action united in the same petition.

7. ——: REQUEST OF TRIAL JUDGE TO STATE SEPARATELY CONCLUSIONS OF FACT: ERROR: STATUTORY CONSTRUCTION. Where a party requests the trial judge to state separately conclusions of fact, under section 695, Revised Statutes 1899, and the trial court enters a decree to which his findings of fact are immediately annexed, the error is one of form only and will be disregarded.

8. Presumptions. It is a maxim that all official action is presumed to be rightly done unless the contrary is shown.

9. Practice, Trial: MOTION: RECITALS OF FACT. Recitals of fact in an overruled motion are disregarded on appeal where the record is silent as to proof thereof.

10. Trial Court: ERROR: PRESUMPTION. Error of the trial court is not to be presumed; it must be shown in Missouri.

11. Equity: PRACTICE, APPELLATE: APPELLATE COURT DEFERS TO DECREE OF TRIAL COURT IN EQUITY CASES. In equity cases where the proof depends on the credibility of oral evidence, the appellate courts defer somewhat to the judgment of the trial judge and do not reverse his findings of fact unless satisfied that they are against the preponderance of the evidence.

12. Appellate Courts, Duty of. It is the duty of appellate courts to distinguish between form and substance, to disregard errors which do not affect the substantial rights of the adverse party, and not to reverse a judgment unless for error materially affecting the merits.

13. **Practice, Appellate.** In an action presenting two counts, the first setting aside a release as having been fraudulently procured, the second a cause of action for damages on account of negligence, the appellate court may affirm as to one count and reverse as to the other.

14. **Damages:** SUPREME COURT DECISIONS. On the second count (for damages for negligence) the court follows the decision in Fisher v. Central Lead Co., 156 Mo. 479.

Appeal from St. Francois Circuit Court.—*Hon. James D. Fox*, Judge.

REVERSED AND REMANDED.

*Wm. Carter* and *M. W. Huff* for appellant; *Percy Werner* of counsel.

(1) The trial court erred in overruling defendant's demurrer to plaintiff's amended petition, and in refusing to dismiss his petition, for the reason that plaintiff failed to plead any tender of any portion of the money that he had received from defendant on the compromise and settlement of the case, or any offer to return the same on the institution of his suit; and, secondly, for the reason that plaintiff's action ought to have been barred and he estopped from bringing the same, because of his long delay in notifying the defendant of his intention to rescind the transaction, and to institute this suit. Klein v. Vogel, 90 Mo. 239; North v. Stevenson, 71 Mo. App. 457; Dwyer v. Railroad, 66 Mo. App. 220; Robinson v. Siple, 129 Mo. 208; Och v. Railroad, 130 Mo. 27; Carson v. Smith, 133 Mo. 607; Hancock v. Blackwell, 139 Mo. 441; Jenkins v. Ins. Co., 79 Mo. App. 55. (2) On the question of laches or delay in notifying defendant of his intention to rescind the contract of release, read in evidence, we cite the following authorities in support of our position. Hart v. Hamlin, 43 Mo. 171; Key v. Jennings, 66 Mo. 370.

(3)   The court erred in overruling defendant's motion, filed on the eighteenth day of May, to dismiss plaintiff's suit for failure to file, at the time of instituting his suit, with the clerk of the court, security for costs of suit, and failing to deposit with the clerk of the court a sum of money sufficient to pay all costs that might accrue in the case as required by section 2915, now section 1542 of the present revised code. Needles v. Burk, 98 Mo. 474.   (4)   The court erred in refusing, when requested by defendant so to do, to make his finding, and state in writing the conclusions of facts found separately from his conclusions of law, as provided by section 2135, now section 695 of the civil code of this State.   Griffith v. Material & Const. Co., 46 Mo. App. 539; Nichols v. Carter, 49 Mo. App. 404; Hamill v. Talbott, 72 Mo. App. 22-32.   (5)   The court erred in rendering a judgment setting aside and cancelling the release executed by plaintiff to defendant, on the twenty-third day of February, 1897, and in holding the same to be null and void, for the reason that such holding and judgment was against the evidence adduced on the trial of said cause on said first count, and against the law of the case, and contrary to equity and fair dealing.   Mateer v. Railroad, 105 Mo. 320; Och v. Railroad, 130 Mo. 27; Hancock v. Blackwell, 139 Mo. 440-454; Homuth v. Street Ry. Co., 129 Mo. 629; McFarland v. Railroad, 125 Mo. 253; Bigelow on Fraud (1 Ed.), page 328.   (6)   The court erred in qualifying defendant's first instruction before giving it to the jury, so as to make it applicable to William Fisher alone, as a fellow-servant of plaintiff, and in refusing to give to the jury instructions numbered eight and nine asked by the defendant.   Defendant was clearly entitled to both these instructions, the giving of which would have entitled defendant to a verdict at the hands of the jury.   McGowan v. Railroad, 61 Mo. 528; Blessing v. Railroad, 77 Mo. 410;

Marshall v. Schricker, 63 Mo. 308; Rains v. Railroad, 71 Mo. 164; Parker v. Railroad, 109 Mo. 378. (7) The court erred in giving to the jury each of the instructions numbered from one to five, inclusive, asked by the plaintiff, for the reason that these instructions were not adapted to the issues in this case, nor calculated to assist the jury in arriving at a correct conclusion upon them, and, therefore, failed to instruct the jury and were absolutely misleading. Fisher v. Central Lead Co., 156 Mo. 457; Holloran v. Iron & Foundry Co., 133 Mo. 478; Bradley v. Railroad Co., 138 Mo. 302. (8) We insist that the court should have given to the jury defendant's first instruction and taken the case away from the jury. Failing in this the court should have given defendant's six instructions. Holloran v. Iron & Foundry Co., 133 Mo. 478; Bradley v. Railroad, 138 Mo. 302. The law applicable to fellow-servants has only been changed in this State so far as it is applicable to railroad corporations. Meyer v. Railroad, 40 Mo. 151; Allen v. Mansfield, 82 Mo. 693.

*M. R. Smith* and *Jas. A. Abernathy* for respondent.

(1) If the demurrer is overruled and the party filing it pleads over, as did appellant, he waives the benefits of his demurrer, for to preserve such benefits he must stand on the demurrer. State ex rel. v. Sappington, 68 Mo. 457; Munford v. Keet, 154 Mo. 51; Haughley v. Joyce, 41 Mo. App. 564. (2) There was no unreasonable delay in respondent in bringing his suit, under the circumstances, considering the nature of the case. Tower v. Pauly, 51 Mo. App. 83; Goldsmith v. Bryant, 26 Wisc. 34; Whitcomb v. Denio, 52 Verm. 382; Baker v. Lever, 67 N. Y. 304; Moaks Underhill on Torts, pages 538 and 539. (3) Respond-

ent tendered, in his second amended petition, the two hundred dollars mentioned in the release, and at the same time offered to return it into court and afterwards paid the same to the clerk. Hancock v. Blackwell, 139 Mo. 455. (4) "It is well settled in this State that the findings of the chancellor will be deferred to by this court, unless he has manifestly disregarded the evidence." Snell v. Harrison, 83 Mo. 658; Hartley v. Hartley, 143 Mo. 220. (5) Confirmation or ratification imply a knowledge of the defects in the act or transaction to be confirmed, and of the right to reject or ratify it. Cumberland Coal Co. v. Sherman, 20 Md. 117. If the transaction has taken place under pressure or the exercise of undue influence, it must clearly and unequivocally appear that the party against whom acquiescence is alleged was *sui juris,* and was released from the influence of the pressure in which he stood at the time of the transaction, and acted freely and advisedly in abstaining from impeaching it. Acquiescence goes for nothing so long as the man continues in the same situation in which he was at the date of the transaction. Kerr on Fraud and Mistake (1 Ed.), p. 301, note 4. (6) A party who seeks the aid of a court of equity for the recission of any contract must assert his claim with reasonable diligence. The rule is founded upon the difficulty of procuring full evidence of the character and particulars of a remote transaction, and the party against whom rescission is sought has changed his condition so that, if rescission was effected by the court, he would be injured. Tower v. Pauly, 51 Mo. App. 83; Piat v. Vattier, 9 Pet. U. S. 405; Kelley v. Hurt, 74 Mo. 561; Bliss v. Prichard, 67 Mo. p. 190. (7) What is reasonable time can not well be defined so as to establish any general rule, and must in a great measure depend upon the exercise of the sound discretion of the court, under all the circumstances of each particular case.

Kerr on Fraud and Mistake (1 Ed.), p. 305, note 6;
Hawley v. Cramer, 4 Cowen 717. (8) On the authority of the case of Fisher v. Central Lead Company,
156 Mo. 457, the case at bar, as to the second count,
must be reversed and remanded.

BARCLAY, J.—This suit presents two distinct
phases defined by two counts of the petition. Plaintiff was injured while in the employ of defendant as a
miner, and he executed a document which defendant
relies upon as a release of liability. The first count
of plaintiff's petition aims to cancel the document on
grounds to be mentioned more fully presently, while
the second count states a case for the recovery of damages for personal injuries caused by negligence alleged.

Some dates which mark important points in the
history of the case are these:

1896, November 7, plaintiff received the injury.

1897, February 23, plaintiff signed the release.

1897, September 11, plaintiff's petition was filed.

1897, October 9, the amended petition was filed.

1897, November 10, demurrer to amended petition.

1897, November 12, demurrer sustained.

1898, April 18, second amended petition was filed.

1898, May 9, demurrer to second amended petition.

1898, November 19, order that plaintiff pay $200
into court.

1899, May 9, last demurrer overruled, and answer filed.

1899, May 9-22, reply filed; trial on first count,
and decree for plaintiff.

The second amended petition, on which the case
was tried, alleges in the first count a permanent injury
to plaintiff by the fall of a large fragment of rock

upon him from the roof of defendant's mine near the town of Flat River, Missouri, where plaintiff was employed by defendant as a miner, operating a drill. It then states that defendant took plaintiff immediately in charge and caused him to be treated for his said injuries, employed a physician and nurse to attend him for about three months until plaintiff removed to Kansas, in February, 1897; that, just as he was about to remove to Kansas, the superintendent of the defendant came to see plaintiff and presented to him a paper which he called a receipt for money and asked him to sign, which plaintiff did without reading it. A copy of the document accompanied the petition (in terms to be recited in this opinion later) and the petition went on thus:

"Plaintiff states that he signed the paper writing, or pretended release and discharge hereto attached as 'Exhibit A.' with the belief that it was merely a receipt for money and without any knowledge whatever that it was a writing designed to take from him the right or cause of action that he had at the time against the defendant company, as doth fully appear hereinafter, and further that the object and purpose of said writing, although carefully concealed, was, on the part of defendant company, fraudulently intended to deprive the plaintiff of his rights of action as aforesaid.

"Seventh. Plaintiff admits and states, that he signed said pretended release without any knowledge of its true character and purpose, and states that he signed it under the mistaken belief or misapprehension that it was a receipt for money.

"Eighth. And further states, that at the time of signing said pretended release he was suffering great mental and physical pain, that his mind in consequence thereof, and of taking and having taken prior thereto large and frequent doses of opiates in one form

and another to temper his sufferings, aforesaid, was clouded and impaired, so much so that he did not comprehend his acts, and did not realize, not having heard read said pretended release, and not being able to read it, what he had done, when he signed said pretended paper.

"Ninth. Plaintiff charges and avers, that the nature and purport of said paper was well known by defendant, that it had been prepared by it and was taken, ready to be signed, to this plaintiff, who was at the time in a serious and suffering condition, and was then and had been for days under the influence of opiates as aforesaid, and did not realize as aforesaid, what he was doing, but yet, notwithstanding his condition as aforesaid, which was well known to defendant, said defendant by its agents by false and fraudulent representations solicited plaintiff to sign said pretended release and discharge, telling him at the time, that it was only a receipt for money, and he not knowing or being made to understand that said paper was in fact in the form of a release and discharge of all rights and causes of action for damages that he then and there had against the defendant, and not a receipt as informed aforesaid, the same he signed as aforesaid under the mistaken belief that it was a receipt only.

"Tenth. Plaintiff states that his name was procured to said pretended release in consequence of his physical and mental condition as aforesaid, and the fraudulent conduct and statements made by defendants at the time through its agent and officer as aforesaid, and it being so procured under such circumstances and by the means and manner as aforesaid on the part of defendant, said pretended release and discharge should and ought to be cancelled and for naught held.

"Eleventh. The premises considered, plaintiff prays the court to take testimony on the validity of

said pretended release, and that the same for the reasons offered be declared void, and cancelled and for naught held and for such other orders as would be just and proper.''

The second count (which sets forth plaintiff's claim for damage on account of the alleged negligence of defendant) will not call for much notice at present for reasons to appear further on.

The defendant demurred to the second amended petition on the following grounds:

"First.    Because plaintiff's petition does not state facts sufficient to constitute a cause of action against defendant.

"Second.    Because the plaintiff wholly failed to exercise his right, if any he had, to rescind the contract of release pleaded in the first count of plaintiff's petition until long after the same had been executed, to-wit: on the twenty-third day of February, 1897, until the eleventh day of September, 1897, at which date he filed his original petition in this cause; and because he has not shown any reason for such delay; and, therefore, ought to be estopped from gainsaying the validity of said release.

"Third.    Because plaintiff has wholly failed to tender to the defendant the money received by him from plaintiff at the time of the execution of said release, and has wholly failed to tender or offer to pay to defendant the expenses attendant upon his sickness, which were paid by the defendant, nor does he now tender or offer to pay said sums of money, and place the defendant in *statu quo,* as he is in duty bound to do before he can maintain this action.''

While the demurrer was pending the court made the following order in regard to the fund mentioned in the receipt, viz. (omitting caption):

"Ordered that the plaintiff pay over to the clerk of this court, thirty days before the next regular term

of this court, the sum of two hundred dollars and upon the affidavit and application of the plaintiff this cause is continued to the next term of this court at the costs of plaintiff.''

The demurrer was overruled, and defendant filed an answer which denied all the charges of improper conduct in obtaining the receipt and set it up as a bar to plaintiff's claim. It also denied the allegations of negligence, and asserted that plaintiff's injury was directly caused by his own want of ordinary care and a like neglect by his fellow-servant.

Plaintiff filed a reply to deny the new matter.

Meanwhile there was a ruling in regard to a motion for security for costs which will be described in connection with our comment thereon.

The learned trial judge directed separate trials of the two causes of action, as he had the undoubted right to do under the Missouri code. R. S. 1899, sec. 694.

The first cause of action was tried at some length. The result of the trial may be conveniently indicated by reciting the essential parts of the decree—especially as a question of procedure is raised by one of the assignments of error referring to its form, viz. (omitting caption):

''Now at this day comes plaintiff in person, and by his attorneys, and this cause having been heretofore submitted to the court on the pleadings and proofs on the first count in plaintiff's petition, and by the court taken under advisement, and the court being now fully advised in the premises doth find the issues for the plaintiff, that the release signed by the plaintiff and delivered to the defendant and offered in evidence, was procured under the deception that said release was, in fact, a receipt for money, and with the fraudulent intent of depriving plaintiff of his right of action that he had against said defendant; that plaintiff was then in no condition to transact business of such

importance, and that when he signed such release, that he did it under the mistaken belief and misapprehension that he was signing simply a receipt for money as aforesaid, and that said plaintiff was incapacitated by reason of his condition, to execute said release; and said release was obtained through the fraud of defendant.

"It is therefore ordered, and adjudged and decreed by the court that the release set up in the defendant's answer and read in evidence in this cause, be, and the same is hereby annulled, set aside, and for naught held, and that the plaintiff have and recover of defendant all costs thereof and have execution. At the request of defendant the court files the following special findings in the cause:

"And the court finds that the Central Lead Company is a corporation duly organized and existing under the laws of the State of Missouri, and authorized to do business of mining and manufacturing of lead ore.

"Further, the court finds that plaintiff was, on the seventh day of November, 1896, and prior thereto, an employee in the service of said defendant company, working in one of the drifts of its mines, near the town of Flat River, in the county of St. Francois and State of Missouri; and finds that plaintiff, while in said mines engaged in the work of handling one of defendant's drilling machines, was injured by a rock falling from overhead upon him, severely injuring him on the back and other parts of his body, and that such injuries so received were of a permanent nature; and further finds that the defendant company at once after plaintiff's receiving such injuries, took charge of him, furnishing him with nurses and medical attention from the time he received said injuries up to the twenty-third of February, 1897, at which time he was removed to his home in the State of Kansas.

"The court finds further, that on the twenty-third day of February 1897, R. D. O. Johnson, superintendent of the company, went to the place where plaintiff was being treated and nursed, when and where plaintiff at the instance of the said Johnson, signed the paper prayed to be cancelled and set aside in the first count of the petition therein, of which the following is a copy:

" 'In consideration of the sum of two hundred dollars to me in hand paid by Central Lead Company, do hereby release and forever discharge said Central Lead Company from any and all actions, cause of actions, claims and demands for, upon, or by reason of any damage, loss or injury which heretofore have been, or which hereafter may be sustained by me in consequence of injury suffered on or about November, 1896, while employed in the mine of said company, said sum in full for all debts and liabilities on account of said accident, it being further agreed and understood that the payment of said sum of two hundred dollars is not to be considered as an admission on the part of said Central Lead Company, of any liability whatever in consequence of said accident.

"In witness whereof, I have hereunto set my hand and seal this twenty-third day of February, eighteen hundred and ninety-seven.

Signed and sealed in the presence of R. D. O. Johnson.    (Seal).

" 'W. A. ROBERTS.
" 'J. M. BLACKWELL.'

"The court further finds that the said paper is in the nature of a contract of release, wherein it is stipulated that in consideration of two hundred dollars, paid by defendant company, plaintiff should forever release and discharge said company from all liabilities,

Vol 95 app—38

in any way arising from the injuries received by him in its mines as aforesaid.

"The court further finds, that plaintiff signed said paper, and defendant company gave him a check at the time for the sum of two hundred dollars; and further finds that plaintiff had been taking prior thereto, for three months or more, and on the day of signing said paper, morphine and other medicines as prescribed by his physicians to relieve his great suffering, and finds that in consequence of the taking of said medicine, and the great pain suffered, his mind was enfeebled, and that plaintiff was rendered by said injuries, from the small of his back down, a paralytic; that when he signed said release he was unable to be out of bed and could not get out of his bed except by assistance; and that he signed it lying in bed. And further finds that plaintiff was subject to hysteria, frequently cried, and had been crying the day he signed said release, and saying he wanted to go home.

"The court further finds, that when said contract of release was signed by plaintiff, he did not comprehend and understand its purpose, that he thought it was a receipt for money; and finds that the defendant company, owing to his enfeebled mental and physical condition, caused as aforesaid, by the injuries received, his protracted suffering, medicine taken, and his financial necessities, his anxieties to get home, his inequality to deal with Johnson, the defendant's agent, and the surroundings, generally, overreached plaintiff, and finds that plaintiff misapprehended the nature of the contract signed, and that defendant took an unfair advantage of him and the situation, so much so as to render said contract of release voidable for imposition and actual fraud.

"The court further finds that plaintiff, in accordance with the order of this court, made at its last term, tendered and deposited the sum of two hundred dollars,

the amount mentioned in said contract of release, with the clerk hereof, which he is hereby directed to pay said defendant.''

1. After the first count had been disposed of there was a trial of the remaining or original cause of action before the court, aided by a jury. We are relieved of the necessity of examining into the merits of that trial by the rulings of the first division of the Supreme Court in a companion case arising out of the identical catastrophe in which plaintiff was injured and wherein another miner, Mr. Fisher, lost his life. Fisher v. Central Lead Co., 156 Mo. 479. That decision determines that there was error in the trial of that action in some particulars which are common to that case and to the one at bar. So a reversal and a new trial on the second count are inevitable (as plaintiff's counsel frankly concede) by force of the authority of the Fisher case, which is binding on this court. Const. Amendt. 1884, sec. 6.

2. It remains for us to examine the assignments of error relating to the proceedings on the first cause of action for the cancellation of the receipt or release.

It is an accepted tenet of appellate practice that where independent causes of action appear in a given case, each may be treated separately on appeal, and that a reversal of a final judgment, which appropriately should be single (R. S. 1899, sec. 694) may occur without disturbing the finding as to any established cause of action which is free of the taint of error. Crowe v. Peters, 63 Mo. 429; Needles v. Burk, 98 Mo. 474; Rice v. Shipley, 159 Mo. 399. Hence, the reversal of the judgment and finding as to the second count leaves us at liberty to review the proceedings on the first count.

3. Complaint of error is made in respect of the ruling on demurrer to plaintiff's last petition; but the chief points of that demurrer were waived by defend-

ant's answering over after the demurrer had been overruled. R. S. 1899, sec. 602; Ware v. Johnson, 55 Mo. 500. It is true, that the vital objections of want of jurisdiction of the subject-matter and total absence of any cause of action in the petition are not waived by answer, but the former of those objections is not urged, and the latter objection we find to be untenable.

4. We consider that the petition states a good cause of action for the cancellation of the document in question. If plaintiff was reduced by his injury and the necessary treatment thereof to the physical extremity portrayed in the petition, he was not in a fit or competent condition to assume the obligation of release expressed in the instrument, in the circumstances described.

It is immaterial that plaintiff might have interposed the same facts as a bar to defendant's use of the document as a defense to plaintiff's claim, as is held might be done in Courtney v. Blackwell, 150 Mo. 245. That privilege would not exclude plaintiff's right to invoke the ancient jurisdiction of equity to eliminate by cancellation the paper as an impediment to the enjoyment of his rights, its invalidity not appearing on its face. Dunn v. Miller, 96 Mo. 324; Pomeroy Eq. Juris. (2 Ed.), sec. 1377.

In this State the practice pursued in this case has been sanctioned from a date as early at least as the decision in Blair v. Railroad, 89 Mo. 382, and is unquestionable law. The enactment of a late statute touching the mode of pleading and practice, where such a document is interposed as a defense (R. S. 1899, sec. 654), does not abrogate the jurisdiction of equity to cancel such instruments, there being no intent exhibited by the enactment to accomplish such abrogation. The remedial jurisdiction of equity is not destroyed by the passage of a measure creating a statutory remedy at

law in like circumstances, in the absence of an expression of legislative purpose to extinguish the ancient jurisdiction. Woodward v. Woodward, 148 Mo. 241.

5. Without determining how imperative as a condition to relief, was the duty resting on plaintiff to refund the sum paid to him at the execution of the paper, we are convinced that the facts and circumstances charged in the petition and found by the trial court, sufficiently excuse the delay on his part in notifying defendant of his intent to rescind and in tendering and refunding the aforesaid sum. Hancock v. Blackwell, 139 Mo. 440; s. c., 150 Mo. 245; Union Pac. R'y Co. v. Harris, 152 U. S. 326; Lumpley v. Wabash R. R. Co., 76 Fed. 66.

6. Defendant assigns error on the refusal of the court to dismiss the cause for failure of plaintiff to furnish security for costs in obedience to the command of section 1542 (R. S. 1899). The weakness of defendant's contention on this score is that there is nothing in the record tending to prove the facts on which the defendant's motion to dismiss proceeds. The recitals of fact in an overruled motion amount to nothing on appeal where the record is silent as to the proof thereof. We are bound to assume that the needful facts were not proven. The maxim that all official steps are presumed to have been taken rightly till the contrary appears, defeats this assignment of error. The law in Missouri is positive in declaring that error of the trial court is not to be presumed. It must be shown.

7. Defendant contends that the trial court refused to state separately in writing the conclusions of fact found, as requested by defendant under section 695 (R. S. 1899). The decree has been copied at length in this opinion to exhibit clearly the force of that contention. We regard the action of the court in the particular mentioned as a substantial compliance with the

law. It would, doubtless, have been more orderly procedure to enter the special findings of fact before the court's judgment or decree thereon; but the findings immediately follow the legal conclusion in the record before us in such a way as to conform in substance to the demands of the law.

It is the duty of appellate courts to "distinguish between form and substance" (R. S. 1899, sec. 676), to disregard any error which shall not affect the substantial rights of the adverse party (R. S. 1899, sec. 659), and to reverse no judgment for error which does not materially affect the merits of the action (R. S. 1899, sec. 865). We obey willingly those precepts and enforce them in letter and spirit by holding this assignment of error to be groundless.

8. Reaching the merits of the conclusion of the trial court on the first count of the petition we do not deem it requisite to enter upon an extended review of the facts shown by the testimony. We agree with the findings of the learned trial judge and hold them to be supported by sufficient proof.

The learned judge found that when plaintiff signed the release he was paralyzed and in an enfeebled mental and physical condition in consequence of his injuries and of morphine and other medicines given to relieve his sufferings; that he did not understand the purport of the document, and that his assent thereto was obtained by imposition, in circumstances which rendered it void for fraud. These facts are reasonable deductions from the testimony which was to a great extent oral. An appellate court has the undoubted right, in reviewing a cause of action of this nature, to deal with the facts as well as with the law involved, and may render such judgment as appears just. But when the truth depends on the credibility of evidence given by witnesses before the court, it is the practice, as has been often said, for the appellate

courts to defer somewhat to the judgment of the judge who confronted the witnesses and had the great advantage of a personal observation of their demeanor. Hence, it has become a general rule not to reverse findings of a trial judge, in such circumstances, unless the appellate court considers that the preponderance of the evidence is against them. We do not find such to be the case here.

On the facts pleaded and found by the court, plaintiff was equitably entitled to the relief which was accorded him.

The findings on the first count are affirmed, the final judgment is reversed and the cause remanded for a new trial on the second cause of action. *Bland, P. J.*, and *Goode, J.*, concur.